RUTH C. PINKEL (Cal. Bar No. 164470)
Email: pinkelr@sec.gov
DONALD W. SEARLES (Cal. Bar. No. 135705)
Email: searlesd@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Gary Y. Leung, Associate Director
Douglas M. Miller, Supervisory Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JULIE A. MINUSKIN, DENNIS R. DIRICCO, THOMAS F. CASEY, GOLDEN GENESIS, INC. and JOSHUA P. STOLL,<br><br>　　　　Defendants. | Case No. 3:22-cv-00483-RSH-AHG<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S TRIAL BRIEF**<br><br>Trial Date:　June 16, 2025<br>Time:　　　9:00 a.m.<br>Ctrm:　　　3B<br>Judge:　　　Hon. Robert S. Huie |


## I. INTRODUCTION

Pursuant to Local Rule 16.1f(2) Plaintiff Securities and Exchange Commission (the "SEC") hereby submits this trial brief to address significant disputed issues of law, including foreseeable procedural and evidentiary issues at trial.[1]

## II. PROCEDURAL HISTORY

The SEC's complaint, filed on April 11, 2022, alleges that the defendant proceeding to trial, Thomas F. Casey ("Casey"), violated Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder (Claim One), Section 17(a) of the Securities Act of 1933 ("Securities Act") (Claim Three), and Sections 5(a) and (c) of the Securities Act (Claim Seven). The relief the SEC may seek for these violations are permanent injunctions, an officer and director bar, disgorgement together with prejudgment interest, and civil penalties. Dkt. No. 1. All relief is to be decided by the Court.

As summarized in the Pretrial Order (Dkt. No. 117), the SEC contends that Casey was the Chairman and CEO of Golden Genesis, a company purportedly engaged in the business of collecting blood plasma from donors between the ages of 18 and 25 for purposes of using it as an anti-aging treatment in older adults. The SEC contends that Casey raised over $10 million from over 230 investors, located nationwide, by making materially false and misleading statements and engaging in a scheme to defraud. The SEC contends, and the Court has already found, that the promissory notes Casey offered and sold in connection with the fraud were securities that were never registered with the SEC.

Casey represented to the investors that they would be paid 10% interest annually, payable in monthly installments, and that their principal would be repaid in two years.

---

[1] The SEC has reminded Casey, both on May 22, 2025 and again on June 9, 2025, of the requirements of the Rule 16.1(f) of the Local Rules, the Court's civil procedures and Court's pretrial order, including the option of filing a trial brief, if Casey so chooses. *See* Declaration of Donald Searles in Support of SEC's Trial Brief ("Searles Decl."), ¶ 2, Ex. 1.

He also represented that the investors' promissory notes would be secured by the filing of a UCC-1 financing statement on the assets of Golden Genesis. Casey made both representations when, in fact, he knew, or was reckless or negligent in not knowing, that a UCC-1 financing statement would not be filed on Golden Genesis's assets, that Golden Genesis did not have sufficient business revenues to pay investors the 10% interest payments he had promised them, and that Casey had to use other investor monies to make those interest payments. The SEC further contends that Casey failed to disclose to investors that he was paying 12% commissions to a third party (Retire Happy) to locate investors, and also failed to disclose any information about his regulatory history with the SEC or the regulatory and criminal history of his business partner, Dennis DiRicco.

The SEC contends that each of these misstatements and omissions were material to investors, and that the disclosure of the true facts would have been important to them in deciding whether to invest in Golden Genesis's promissory notes.

### III. DISPUTED ISSUES OF LAW

**A. The Golden Genesis Promissory Notes Are Securities.**

On March 25, 2024, the Court granted in part, and denied in part, the SEC's motion for summary judgment against Casey and Golden Genesis. Dkt. No. 55. The Court found that Casey and Golden Genesis had violated the securities registration provisions of Sections 5(a) and (c) of the Securities Act (Claim Seven), but denied the SEC's motion for summary judgment on its antifraud claims (Claims One and Three), finding that there were contested issues of material fact as to whether Casey, and by imputation, Golden Genesis, acted with scienter. In granting summary judgment on the SEC's claim under Section 5 of the Securities Act, the Court found that the promissory notes offered by Casey and Golden Genesis were securities, and that they were offered and sold through interstate commerce. Accordingly, those elements of the SEC's remaining claims under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10(b)-5 have already been determined.

In accordance with its ruling on summary judgment, the Court has granted the

SEC's motions *in limine* to preclude Casey from asserting a good faith defense that he did not believe the promissory notes offered by Golden Genesis were securities. *See* Dkt. Nos. 80-1, 131.

During the meet and confer process in connection with the SEC's unopposed *ex parte* motion to allow the use of electronic equipment in Court (Dkt. No. 134), Casey made various statements that notwithstanding the Court's determination that the promissory notes offered by Golden Genesis are securities, he believes that issue remains to be decided by the jury. Casey has also included in his list of exhibits approximately a dozen exhibits (Exhibits 500-505, 509, 513-517, 527, and 535-53) that, from the SEC's perspective, are only relevant to the issue of whether the promissory notes are securities. The SEC sought to exclude those exhibits in its sixth motion *in limine*. Dkt. No. 124-1. The Court denied, in part, the SEC's request to file its sixth motion *in limine*, reserving ruling on the admissibility of the challenged exhibits for when they are introduced at trial.

Given Casey's *pro se* status, and his apparent confusion about the preclusive effect of the Court's summary judgment order and its order granting the SEC's third motion *in limine*, the SEC requests that the Court again admonish Casey, prior to trial and outside the presence of the jury, that he will not be permitted to argue, or present evidence, that the promissory notes are not securities or that he had a good faith belief that they were not securities.

## IV. FORESEEABLE PROCEDURAL AND EVIDENTIARY ISSUES

### A. The SEC's Anticipated Witnesses and Estimated Length of Trial.

The SEC anticipates it might be able to rest its case on Wednesday, June 18, 2025, depending upon the length of Casey's cross examinations and his testimony in the SEC's case-in-chief. In addition to calling Casey in its case-in-chief, the SEC anticipates calling the following six witnesses, presented below in alphabetical order:

**Daniel Bois:** Mr. Bois is 67 years old and resides in Fairfield, Maine. He invested $134,000 in Golden Genesis and received interest payments for approximately

two years and ultimately lost his entire principal. Mr. Bois spoke with Casey after Golden Genesis stopped making interest payments. Bois received "Lender Update" emails from Casey about the supposed progress in the building of Golden Genesis's plasmapheresis center and providing various explanations regarding his inability to repay the "lenders." He is expected to testify that the misrepresentations and omissions at issue, had he known the facts, would have been important to deciding whether to invest in Golden Genesis's promissory notes. Mr. Bois will also testify that, with the assistance of Retire Happy, he made a number of investments in alternative assets for approximately 18 months before he chose to invest in Golden Genesis. One of those prior investments, for which he was fully repaid prior to his Golden Genesis investment, had a promissory note with "security" language similar to that used in Golden Genesis's promissory notes. This prior investment was in Adomani, the company for which Dennis DiRicco raised funds through Until Tomorrow Drivetrains. Dkt. 1 ¶ 20. Mr. Bois will testify that he was not aware that DiRicco had any role in Golden Genesis, and that he knew nothing about DiRicco's regulatory history. He was also not aware that Golden Genesis had used $2.5 million in investor funds to invest in Adomani's initial public offering and would not have authorized the use of the funds he invested in Golden Genesis funds for such a purpose.

**Kathryn Campbell:** Ms. Campbell is a Vice President at Provident Trust Group, LLC ("Provident Trust"), where the majority of the investors' individual retirement accounts were held, and from which investments to Golden Genesis were wired, and to which investor interest payments were made. She will testify that Provident Trust is only an account custodian for self-directed retirement accounts that hold alternative investments, other than publicly traded stocks and bonds, such as real estate, private companies, and promissory notes. She will explain that Provident Trust is not a financial adviser or a fiduciary for any account holder, does no due diligence on any investment selected by the account holders (which is solely within the decision of the account holder), and makes no recommendations nor provides any advice to its

customers on the advisability of any particular investment. She is also expected to testify that Provident Trust did not draft Golden Genesis's promissory notes, and did not agree to secure those promissory notes with its own assets.

**Timothy Garceau:** Mr. Garceau was an investor in Golden Genesis, who resided in the state of New York at the time of his investment. He is expected to testify that he reviewed Golden Genesis's promotional brochure before he invested and had numerous communications with Casey after he invested. After his interest payments stopped, Mr. Garceau spoke to Casey several times on the phone where he was provided with various excuses as to why his interest payments stopped. Garceau received "Lender Update" emails from Casey about the supposed progress in building the plasmapheresis center and repayments to lenders. He is expected to testify that the misrepresentations and omissions at issue, had he known the true facts, would have been important to deciding whether to invest in Golden Genesis's promissory notes.

**Duane Campbell, CPA, CFA:** Mr. Campbell is the SEC's retained forensic accounting expert. He is expected to testify that, according to financial records, Golden Genesis raised approximately $10.3 million from investors and returned approximately $2 million in "interest" payments to investors and did so using other investors' funds. Financial records further show that DiRicco, Minuskin, and Stoll all received "commissions" on investor funds, which collectively totaled 12% of the amounts raised. Thomas Casey and his domestic partner, as well as his domestic partner's son, all received "salary" payments made from investor funds. During a several month period in 2017, approximately $2.5 million of Golden Genesis investor funds were diverted through bank accounts controlled by DiRicco into the names of other companies before eventually being fully returned, in numerous transactions, to Golden Genesis's bank accounts approximately eighteen months later.

**Frank Prestigiovanni:** Mr. Prestigiovanni is 67 years old and lives in the Houston, Texas area. He invested $100,000 of his retirement funds in Golden Genesis. He received interest payments which stopped in late 2018. He is expected to testify

about his communications with Casey, both before and after he invested in Golden Genesis. He is expected to testify that the misrepresentations and omissions at issue, had he known the facts, would have been important in deciding whether to invest in Golden Genesis's promissory notes.

**Blanche Scioli:** Ms. Scioli is 82 years old and lives in the Philadelphia area. She invested $120,000 with Golden Genesis. Her interest payments stopped in late 2018 and she has not been repaid her principal. She is expected to testify that she reviewed Golden Genesis's promotional brochure before she invested and had numerous communications with Casey after she invested. She is expected to testify that the misrepresentations and omissions at issue, had she known the facts, would have been important in deciding whether to invest in Golden Genesis's promissory notes.

### B. Anticipated Evidentiary Issues

#### 1. Timothy Garceau

Timothy Garceau sued Casey in Nevada state court for securities fraud. In *Garceau v. Golden Genesis, Inc., et al.*, Case No A-21-832722-C, the state court dismissed the complaint Garceau filed against Golden Genesis for lack of prosecution. When going over the factors the court considered in deciding to dismiss the complaint, the court noted that it had previously ruled that the notes were not securities under Nevada State law. *See* Dkt. No. 124-2 (Searles Declaration, Exhibit 10).

The Court granted the SEC's fourth motion *in limine* to exclude evidence concerning the Nevada actions. Dkt. Nos. 122-1, 131. In conducting its direct examination of Garceau, the SEC does not intend to ask Garceau any questions about the case he filed against Casey in Nevada state court. Nor is that case, or its outcome, relevant to any issue, including Garceau's credibility as a witness. To the extent Casey seeks to attack Garceau's character for truthfulness he may do so by inquiring into the amount of money Garceau lost through his investment in Golden Genesis. But the fact that Garceau sued Casey in state court to get his money back, or that the Nevada state court case was ultimately dismissed or why, is not probative of Garceau's character for

truthfulness or untruthfulness, and any questions to the witness regarding that case should not be permitted. *See* Fed. R. Evid. 608 (extrinsic evidence is not admissible to prove instances of a witness's character for truthfulness, nor should cross-examination on the subject be permitted where it is not probative of a witness's character for truthfulness). In addition, permitting Casey to ask Garceau questions about the Nevada action, its outcome, or the state court's reasons for dismissing the action, are both irrelevant and will likely confuse the issues and mislead the jury, particularly where this Court has already found that the promissory notes offered by Golden Genesis *are* securities. *See* Fed. R. Evid. 401 ("[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action"); Fed. R. Evid. 403 ("[t]he court may exclude relevant evidence if its probative value is substantially outweighed by the danger of … confusing the issues, [or] misleading they jury…").

### 2.   Daniel Bois

Daniel Bois, a Golden Genesis investor, is 67 years old and lives in Fairfield, Maine. In an unexpected development, the SEC learned on June 5, 2025, that Mr. Bois's prostate cancer has metastasized to other parts of his body and that he will be placed on an aggressive regimen of chemotherapy that, according to his doctor's note, will prevent him from traveling to San Diego to testify in person. *See* Searles Decl., ¶ 3, Ex. 2 (doctor's note). Given his serious medical condition and the debilitating effects of his treatment, the SEC requests permission to present Mr. Bois's testimony by remote video link from his home in Maine. Under Rule 43 of the Federal Rules of Civil Procedure, a party requesting that its witness testify remotely at trial must show "good cause in compelling circumstances and with appropriate safeguards" to overcome the "strong" preference that all trial testimony be in person. *In re Kirkland*, 75 F.4th 1030, 1043-45 (9th Cir. 2023). A district court's decision whether to permit remote testimony at trial is reviewed for an abuse of discretion. *See Palmer v. Valdez*, 560 F.3d 965, 969-70 (9th Cir. 2009). The SEC respectfully submits that Mr. Bois's unexpected health issues

satisfy the good cause standard under Rule 43. *See Wilson v. United States*, No. 2:18-CV-1241 JCM (NJK), 2023 U.S. Dist. LEXIS 64487 (D. Nev. Apr. 5, 2023) (witness's recent and unexpected medical procedure constituted good cause for remote testimony); *see also Palmer v. Valdez*, 560 F.3d 965, 969-70 (9th Cir. 2009) (a district court's decision whether to permit remote testimony at trial is reviewed for abuse of discretion).

On Friday, June 6th and again on two occasions on Monday, June 9th, the SEC emailed Casey asking whether he had an objection to the SEC presenting Mr. Bois's testimony by a video link, and attached Mr. Bois's doctor note to the first email. On Saturday, June 7th, Casey responded by stating the Mr. Bois was not "an investor" in Golden Genesis. After the SEC provided Mr. Casey with a copy of Mr. Bois's direction of investment form and promissory note, showing that Mr. Bois had, in fact, invested in Golden Genesis's promissory notes (which are also listed in the SEC's exhibit list at Exhibit 130), Mr. Casey responded by stating that he objected to Mr. Bois being called as a witness in any fashion, reiterating his position that Golden Genesis's promissory notes are neither a security nor an investment. Searles Decl., ¶ 4, Ex. 3. Casey's response further underscores the need for the Court to admonish Casey, prior to trial and outside the presence of the jury, that he will not be permitted to argue, or present evidence, that the promissory notes are not securities or that he had a good faith belief that they were not securities.

### C. Anticipated Additional Jury Instructions

In addition to the joint proposed jury instructions filed on February 20, 2025 (Dkt. No. 99), the SEC contemplates the need for the following additional instructions:

#### 1. Other Defendants

The jury is likely to hear about other persons involved in the offer and sale of Golden Genesis's promissory notes, including co-defendants Julie Minuskin and Joshua Stoll, as well as evidence concerning co-defendant Dennis DiRicco, his role at Golden Genesis and the diversion of $2.5 million in investor funds to a DiRicco-related entity called Adomani. To the avoid speculation by the jury as to why those individuals are

not on trial, the SEC proposes the following additional jury instruction:

> There has been evidence in this case indicating that persons other than the defendant were or may have been involved in the violations of the securities laws for which the defendant is on trial. There may be many reasons why those persons are not here on trial. Therefore, do not speculate or guess as to why another person is not on trial or whether the SEC has filed or will file any claims against other persons. Your sole duty is to decide whether the SEC has proved its claims against the defendant by a preponderance of the evidence.

This instruction is based on California Jury Instructions, Criminal ("CALJIC") 2.11.5.

### 2. Investor Negligence is Not a Defense

Casey may attempt to argue that Golden Genesis's investors were somehow negligent in deciding to invest in Golden Genesis's promissory notes by not exercising reasonable care in making their investment decisions. Contributory negligence is not a defense to an intentional tort such as securities fraud. *See Casella v. Webb*, 883 F.2d 805, 809 (9th Cir. 1989); *In re Motorola Sec. Litig.*, No. 03 C 287, 2003 U.S. Dist. LEXIS 12651, at *16 (N.D. Ill. July 16, 2003) (collecting cases); *MidAmerica Federal Savings & Loan*, 886 F.2d 1249, 1256 (10th Cir. 1989) ("[a] purchaser has no duty to investigate a seller's possible fraud and need not verify a statement's accuracy."); *see also United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (a fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes). Accordingly, should Casey attempt to elicit testimony from investors that they failed to exercise due care or due diligence prior to investing, his questions are irrelevant and, to the extent the need arises at trial, the jury should be instructed that any negligence on the part of the investor is not a defense to securities fraud.

### 3. Withdrawal of SEC's Proposed Instruction No. 40

The Court has not yet held a conference with the parties on their joint proposed jury instructions. Although Casey does not dispute any of the SEC's proposed

instructions, the SEC has decided to withdraw its proposed instruction number 40 ("The Elements of the SEC's That Are Not In Dispute"), which purports to summarize the Court's summary judgment order as to the falsity and materiality of Casey's statements to investors regarding interest payments and the collateral for Golden Genesis's promissory notes. *See* Dkt. No. 99. The falsity and materiality of those statements will be proven at trial and hence the SEC's proposed instruction number 40 is unnecessary and may tend to confuse the jury, as there are additional material misrepresentations and material omissions at issue that were not addressed in the Court's summary judgment order.

DATED: June 9, 2025

Respectfully submitted,

*/s/ Ruth C. Pinkel*
Ruth C. Pinkel
Donald W. Searles
Counsel for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

    U.S. SECURITIES AND EXCHANGE COMMISSION,
    444 S. Flower Street, Suite 900, Los Angeles, California 90071
    Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On June 9, 2025, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S TRIAL BRIEF** on all the parties to this action addressed as stated on the attached service list:

☒ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

    I declare under penalty of perjury that the foregoing is true and correct.

Date: June 9, 2025　　　　　　　　　*/s/ Ruth C. Pinkel*
                                                  Ruth C. Pinkel

*SEC v. Julie A. Minuskin, et al.*
**United States District Court—Southern District of California**
**Case No. 3:22-cv-00483-RSH-AHG**

**<u>SERVICE LIST</u>**

Julie A. Minuskin (via U.S. Mail)
7268 W. Camero Avenue
Las Vegas, Nevada 89113
***Defendant Julie A. Minuskin  (Pro Se)***

Edward S. Zusman (via ECF)
Kevin K. Eng
MARKUN ZUSMAN & COMPTON LLP
465 California Street, Suite 500
San Francisco, California 94104
ezusman@mzclaw.com
keng@mzclaw.com
Attorneys for Dennis R. Di Ricco

Thomas F. Casey (via ECF)
914 Rainbow Crest Rd.
Fallbrook, California 92028
tom@goldengenesis.com
***Defendant Thomas F. Casey (Pro Se)***

Golden Genesis, Inc. (via U.S. Mail)
c/o Thomas F. Casey
914 Rainbow Crest Rd.
Fallbrook, California 92028
tom@goldengenesis.com
***Defendant Golden Genesis, Inc.***

Joshua P. Stoll (via U.S. Mail)
4618 Saint Francis Street
North Las Vegas, Nevada 89031
***Defendant Joshua P. Stoll  (Pro Se)***