UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THOMAS F. CASEY,<br><br>　　　　　　　　　　　Defendant. | Case No.: 22-cv-483-RSH-AHG<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR REMEDIES AGAINST DEFENDANT THOMAS F. CASEY AND (2) DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>[ECF Nos. 152, 154] |

Pending before the Court are motions by the Parties following the jury trial in this case: (1) a motion for plaintiff Securities and Exchange Commission (the "SEC") for remedies against defendant Thomas F. Casey, and (2) Casey's motion for reconsideration. ECF Nos. 152, 154. The Court finds the motions suitable for disposition without further hearing. As set forth below, the SEC's motion is granted and Casey's motion is denied.

**I.　BACKGROUND**

On April 8, 2022, plaintiff Securities and Exchange Commission (the "SEC") filed this action against Minuskin, Stoll, Golden Genesis, Dennis R. DiRicco, and Thomas F.

Casey alleging violations of the Securities Act of 1933 ("Securities Act"), Securities Exchange Act of 1934 ("Exchange Act"), and Rule10b-5 thereunder. ECF No. 1.

Defendants Minuskin and Stoll failed to appear in the action, and on July 29, 2022, the Clerk of Court entered default against them. ECF No. 15. The SEC has moved for default judgment against them. ECF No. 153.

On April 28, 2022, the Court entered a bifurcated consent judgment against defendant DiRicco. ECF Nos. 3, 6. The judgment included a permanent injunction. ECF No. 6. Thereafter, following a hearing, on February 28, 2025 the Court entered final judgment against DiRicco that also included: (1) disgorgement of $183,298, (2) prejudgment interest on disgorgement in the amount of $66,979.47, and (3) a civil penalty in the amount of $300,000. ECF No. 113.

Defendants Casey and Golden Genesis, both represented by the same law firm, filed an answer to the Complaint. ECF No. 24. On March 25, 2024, following briefing and argument, the Court granted summary judgment in favor of the SEC, and against Casey and Golden Genesis, on the SEC's claim for violations of Sections 5(a) and 5(c) of the Securities Act (Claim Seven of the Complaint), which prohibits the sale of securities unless a registration statement is in effect. ECF No. 55. The Court's order also determined, as a threshold matter, that the promissory notes at issue in the case were "securities." *Id.* at 7-13.

The law firm representing Casey and Golden Genesis later moved to withdraw from the representation. On January 29, 2024, the Court granted the motion to withdraw, and set a deadline for Golden Genesis to make an appearance through new counsel. ECF No. 84. No attorney thereafter appeared for Casey or Golden Genesis. Accordingly, on February 19, 2025, the Court struck the answer of Golden Genesis, and entered default against the company. ECF Nos. 96, 97.

Casey proceeded to a jury trial pro se on the SEC's claims for (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 (Claim One of the Complaint); and (2) violation of Section 17(a) of the Securities Act (Claim Three of the Complaint).

The evidence at trial reflected that Casey was the Chairman and CEO of Golden Genesis, a company that described itself as engaged in the business of collecting blood plasma from young donors for transfusion into older adults as an anti-aging treatment. Between April 2016 and August 2019, Golden Genesis raised approximately $10,385,000 from a total of 238 investors through the issuance of promissory notes, with the assistance of a company called Retire Happy that promoted investment in Golden Genesis to its retiree clients. *See* Ex. 190 (summary chart of investments). Golden Genesis privately agreed to pay Retire Happy a 12% commission based on the gross amount of money that Retire Happy raised from its clients. *See* Ex. 8A (Retire Happy-Golden Genesis consulting agreement). In April 2016, at the outset of the partnership between Golden Genesis and Retire Happy, Casey drafted and sent to Retire Happy a sales brochure that described the promissory note offering. Ex. 10 (Golden Genesis brochure). The sales brochure stated that the notes would be issued for two years and yield 10% interest, payable on the last day of every month. The sales brochure further provided that the notes were to be secured by a UCC-1 financing statement "on all assets of Golden Genesis." *Id.* at 7.

The SEC advanced several theories of fraud at trial. The SEC argued that the statements in the brochure were false in that Casey never filed a UCC-1 statement, and never intended to file one. The SEC also argued that the brochure failed to disclose the 12% commission that Golden Genesis was paying Retire Happy out of the gross investment proceeds, and also failed to disclose the criminal history of Golden Genesis's CFO Dennis DiRicco or the past regulatory actions taken by the SEC against DiRicco and against Casey himself. Finally, the SEC argued that the issuance of promissory notes amounted to a scheme to defraud by paying the investors the promised 10% interest payments by using amounts raised from other investors. Of the over $10 million collected from investors, approximately $2.1 million was used to make interest payments to investors. *See* Exs. 190, 192 (summary chart of amounts returned to investors). The retirees lost the rest of their investments in Golden Genesis; in late 2018, the company became unable to make payments to any of its investors. Ex. 268 (November 2018 email from Casey). During the

relevant time period, Casey paid himself, his girlfriend, and her son salaries totaling approximately $1.3 million. *See* Ex. 198 (chart reflecting payroll amounts).

Casey argued at trial that he never intended the statements in the sales brochure to be provided to investors. He further contended that he had no need to file a UCC-1 as stated in the sales brochure, because he maintained that the trust company used for holding the promissory notes, Provident Trust, had volunteered beginning in 2016 to secure those notes with a UCC-1 on its *own* assets instead of the assets of Golden Genesis. However, in an email from January 2018 seeking to raise additional funds from Retire Happy investors, Casey again told Retire Happy that the notes "are secured by … a UCC-1 on all assets of GG, including equipment, receivables, and bank accounts." Ex. 125.

On June 24, 2025, the jury returned a verdict finding Casey liable on both of the SEC's fraud claims against Casey. ECF No. 150.

On August 14, 2025, the SEC filed its present motion seeking injunctive and monetary relief against Casey. ECF No. 152. That motion is fully briefed. ECF Nos. 158, 159.

On August 15, 2025, Casey filed his present motion seeking the following alternative forms of relief: (1) reconsideration of the Court's March 25, 2024 summary judgment order determining that the promissory notes at issue in this case were "securities" subject to the federal securities laws; (2) a new trial; or (3) certification of an interlocutory appeal of the Court's March 25, 2024 order. ECF No. 154 at 1.

**II.    CASEY'S MOTION**

The Court, in its order of March 25, 2024 granting in part the SEC's motion for summary judgment, determined that the promissory notes were securities under *Reves v. Ernst & Young*, 494 U.S. 56 (1990). ECF No. 55 at 7-13. Casey seeks reconsideration of this order.

Casey has previously moved for reconsideration of this same order, and in the alternative, for certification of an interlocutory appeal. ECF Nos. 93, 102, 115. At a hearing on April 3, 2025, the Court denied both forms of relief. ECF No. 131.

The Court again denies Casey's request for reconsideration. The purpose of the trial was not to determine whether the Golden Genesis promissory notes were securities; that question had already been determined by the Court. However, the evidence at trial was fully consistent with the Court's prior analysis in its March 25, 2024 order, ECF No. 55 at 7-13, as well as with the Court's oral ruling on April 3, 2025 denying Casey's first motion to reconsider. Although Casey's motion refers in general terms to the trial evidence, the motion is a reprisal of arguments he has already made and that the Court has previously rejected.

Casey's motion does not set forth a basis for seeking a new trial other than his contention that the notes were not securities. This request for a new trial is denied.

The Court also, again, denies Casey's request for certification of an interlocutory appeal. With the filing of this order and the entry of judgment, Casey is entitled to appeal the final judgment against him without need for certification.

### III.     THE SEC'S MOTION

The SEC seeks three forms of relief against Casey, following the jury verdict against Casey: (1) a permanent injunction against committing future violations of the securities laws; (2) an officer and director bar; and (3) civil monetary penalties. ECF No. 152-1 at 1. Casey's opposition brief asserts that these remedies are not appropriate because he did not violate the securities laws, the promissory notes at issue not being securities.[1]

####   A.     Injunctive Relief

Both the Securities Act and the Exchange Act authorize injunctions. 15 U.S.C. §§ 77t, 78u. To obtain a permanent injunction, the SEC must demonstrate that: (1) the SEC has succeeded on the merits; (2) irreparable harm will likely result in the absence of the injunction; (3) the balance of equities tips in the SEC's favor; and (4) the injunction is in

---

[1] Casey's opposition brief was untimely filed on September 4, 2025, six days after the due date. ECF Nos. 146, 159. However, it relies on the same arguments as Casey's timely motion for reconsideration.

the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *cf. Starbucks v. McKinney*, 602 U.S. 339, 345 (2024) ("For preliminary injunctions, the four criteria identified in *Winter* encompass the relevant equitable principles."). Casey's opposition brief does not address or challenge the SEC's analysis of these factors.

Here, the SEC has succeeded on the merits, having obtained summary judgment against Casey on Claim Seven of the Complaint, and a jury verdict against Casey on Claims One and Three of the Complaint. This satisfies the first *Winter* factor.

In determining the likelihood of irreparable harm absent an injunction, the Court considers the likelihood of future violations by the defendant. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Courts assess the totality of the circumstances, considering factors such as (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his or her conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and (5) the sincerity of his or her assurances against future violations. *Id.* Those factors favor a finding of irreparable harm here. The evidence at trial reflected a fraudulent course of conduct by Casey lasting several years in which he knowingly profited from misrepresentations made to retirees. Far from recognizing any wrongful conduct, or providing assurances against future violations, Casey has repeatedly and consistently derided the SEC and portrayed himself as an innocent businessman who is the victim of government overreach. Remarkably, Casey went so far as to offer to sell plasma at a discount to victims during his cross-examination of them—effectively soliciting elderly investors who had already lost hundreds of thousands of dollars to give him even more money. Casey thus continues to hold himself out as the principal of Golden Genesis and continues to solicit funds on behalf of the company, demonstrating a likelihood of future violations. The second *Winter* factor favors an injunction.

The balance of the equities and the public interest also favor an injunction here, based on the need to protect investors. *See, e.g., SEC v. Ballout*, No. 24-81170-CV, 2025 U.S. Dist. LEXIS 110864, at *10 (S.D. Fla. June 11, 2025). This includes retirees of

advanced age. The Court concludes that the limited injunction sought by the SEC is warranted here.

### B. Officer and Director Bar

In applicable proceedings, "the court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section [17(a)(1)] of this title from acting as an officer or director of any issuer that has a class of securities registered ... or that is required to file reports ... if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer." 15 U.S.C. § 77t(e); *see also* 15 U.S.C. § 78u(d)(2) (same for Section 10(b) of the Exchange Act). The Court also has authority to impose an officer and director bar under its inherent equitable powers. *SEC v. Gault*, 751 F. App'x 974, 980 (9th Cir. 2018).

In determining whether to order such a bar, the Court may consider the following nonexclusive factors: (1) the "egregiousness" of the underlying securities law violation; (2) the defendant's "repeat offender" status; (3) the defendant's "role" or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998) (quoting *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)). Casey's opposition does not address or challenge the SEC's analysis of these factors.

These factors favor issuance of such a bar here. The evidence at trial, consistent with the jury's verdict, reflected that as the CEO and President of Golden Genesis, Casey knowingly participated in a long-running fraud scheme that resulted in raising over $10 million for his company from 238 victims. Casey drafted the sales brochure containing the misrepresentations and material omissions that were repeated to Retire Happy customers, to Casey's profit. His fraud was egregious and he is unrepentant. Casey is a "repeat offender," having been previously enjoined in 1998 from violating the securities laws. *See* Ex. 104 (final judgment of permanent injunction). And as discussed above, the Court is concerned about the likelihood of recurrence of misconduct. The Court concludes that

Casey's conduct demonstrates his unfitness to serve as the officer or director of an issuer, and that an officer and director bar is warranted.

### C. Monetary Penalties

Under Section 20(d)(2)(A) of the Securities Act and Section 21(d)(3)(B) of the Exchange Act, the amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B). Both statutes provide for the imposition of penalties according to a statutory three-tier system. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). First-tier penalties may be imposed for any violation of either Act. *See id.* §§ 77t(d)(2)(A), 78u(d)(3)(B)(i). Second-tier penalties apply to violations that "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement." *Id.* §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii). Third-tier penalties apply to violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Each tier provides that a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation." *Id.* §§ 77t(d)(2), 78u(d)(3)(B). For violations occurring from November 3, 2015 through the present, the maximum inflation-adjusted statutory penalty for natural persons is $11,823 as to first-tier penalties; $118,225 as to second-tier penalties; and $236,451 as to third-tier penalties. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B); *see also* Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2025), *available at* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments (last visited Sept. 9, 2025). Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from future violations, in determining the amount of civil penalties courts frequently apply the factors set forth in *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980), set forth above, used to determine the likelihood of future violations in the context of

injunctive relief. *See, e.g.*, *SEC v. Abacus Int'l Holding Corp.*, No. C 99-02191 TEH, 2001 U.S. Dist. LEXIS 12635, at *15 (N.D. Cal. Aug. 16, 2001).

Here, the SEC seeks imposition of (1) a tier-one penalty of $10,000 based on the sale of unregistered securities, in connection with each of the 238 victims, totaling $2,380,000; and (2) a single tier-three penalty in the statutory maximum amount of $236,451 based on his commission of securities fraud that resulted in substantial losses to investors. Casey's opposition does not address or challenge the SEC's analysis of civil penalties.

The *Murphy* factors, set forth and analyzed above, support the SEC's request for total civil penalties of $2,616,451. This amount is a fraction of the over $10.3 million raised from investors or the over $8 million in unrecovered principal. Needless to say, it is far less than the principal and interest that were fraudulently promised to those investors. The SEC represents that, if paid, the SEC will seek Court approval for a Fair Fund under Section 308 of the Sarbanes-Oxley Act to distribute the payments to harmed investors. ECF No. 152-1 at 18. The Court concludes that the civil penalties requested by the SEC against Casey are warranted here.

## IV. CONCLUSION

For the foregoing reasons, Casey motion for reconsideration, for a new trial, or for certification of an interlocutory appeal [ECF No. 154] is **DENIED**. The SEC's motion for remedies [ECF No. 152] is **GRANTED**. The Court will enter judgment as provided herein.

**IT IS SO ORDERED**.

Dated: September 10, 2025

_____
Hon. Robert S. Huie
United States District Judge