UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JULIE MINUSKIN et al.,<br><br>Defendants. | Case No.: 22-cv-483-RSH-AHG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST JULIE A. MINUSKIN, JOSHUA P. STOLL, AND GOLDEN GENESIS, INC.**<br><br>[ECF No. 153] |

Pending before the Court is a motion by plaintiff Securities and Exchange Commission (the "SEC") for default judgment against defendants Julie A. Minuskin, Joshua P. Stoll, and Golden Genesis, Inc. ("Golden Genesis"). ECF No. 153. As set forth below, the motion is granted.

## I.     BACKGROUND

On April 8, 2022, plaintiff Securities and Exchange Commission (the "SEC") filed this action against Minuskin, Stoll, Golden Genesis, Dennis R. DiRicco, and Thomas F. Casey alleging violations of the Securities Act of 1933 ("Securities Act"), Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder. ECF No. 1.

|   |   |
|---|---|
| 1 | Defendants Minuskin and Stoll failed to appear in the action, and on July 29, 2025, |
| 2 | the Clerk of Court entered default against them. ECF No. 15. On September 15, 2022, the |
| 3 | SEC filed an initial motion for default judgment against Minuskin and Stoll. ECF No. 18. |
| 4 | The Court thereafter denied the motion without prejudice, in the exercise of its discretion, |
| 5 | citing the pendency of the action against other defendants who were actively defending the |
| 6 | case, and the risk of logically inconsistent results if those defendants were to prevail. ECF |
| 7 | No. 35 at 7-8. |
| 8 | On April 28, 2022, the Court entered a bifurcated consent judgment against |
| 9 | defendant DiRicco. ECF Nos. 3, 6. The judgment included a permanent injunction. ECF |
| 10 | No. 6. Thereafter, following a hearing, on February 28, 2025 the Court entered final |
| 11 | judgment against DiRicco that also included: (1) disgorgement of $183,298, (2) |
| 12 | prejudgment interest on disgorgement in the amount of $66,979.47, and (3) a civil penalty |
| 13 | in the amount of $300,000. ECF No. 113. |
| 14 | Defendant Casey and Golden Genesis, both represented by the same law firm, filed |
| 15 | an answer to the Complaint. ECF No. 24. On March 25, 2024, following briefing and |
| 16 | argument, the Court granted summary judgment in favor of the SEC, and against Casey |
| 17 | and Golden Genesis, on the SEC's claim for violations of Sections 5(a) and 5(c) of the |
| 18 | Securities Act (Claim Seven of the Complaint), which prohibits the sale of securities unless |
| 19 | a registration statement is in effect. ECF No. 55. |
| 20 | The law firm representing Casey and Golden Genesis later moved to withdraw from |
| 21 | the representation. On January 29, 2024, the Court granted the motion to withdraw. ECF |
| 22 | No. 84. The Court stated: |
| 23 | > The Court grants the motion filed by attorneys Edward S. Zusman and Kevin K. Eng, of the law firm Markun Zusman & Compton, LLP, to withdraw as counsel of record for Defendants Golden Genesis, Inc. and Thomas F. Casey [ECF No. 73]. The declaration filed by counsel makes clear that Mr. Casey and Golden Genesis, Inc. have repudiated continued representation by the law firm [ECF No. 82]. Mr. Casey is a party proceeding pro se with the following address: 914 Rainbow Crest Rd. Fallbrook, California 92028-9618, listed in ECF No. 83. *Golden* |

> *Genesis, Inc. is not represented by counsel, and pursuant to Civil Local Rule 83.3(j) corporations must be represented by counsel. New counsel for Golden Genesis, Inc. shall file a notice of appearance on or before February 10, 2025 or the Answer of Golden Genesis will be stricken and default entered.* All dates are to remain as previously set.

*Id.* (emphasis added). No attorney thereafter appeared for Casey or Golden Genesis. Accordingly, on February 19, 2025, the Court struck the answer of Golden Genesis. ECF No. 96. The same day, the Clerk of Court entered default against Golden Genesis. ECF No. 97. The Court granted the SEC leave to file a motion for default judgment against Golden Genesis within 45 days of a verdict in connection with the SEC's case against defendant Casey. ECF No. 121.

Casey proceeded to a jury trial pro se on the SEC's claims for (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 (Claim One of the Complaint); and (2) violation of Section 17(a) of the Securities Act (Claim Three of the Complaint).

On June 24, 2025, the jury returned a verdict in favor of the SEC and against Casey on each of the SEC's remaining claims against Casey. ECF No. 150. The SEC thereafter filed a motion for remedies based on the jury's verdict. ECF No. 152. On September 10, 2025, the Court entered judgment against Casey, permanently enjoining him from future violations of the securities laws, barring him from serving as an officer or director of an issuer, and imposing civil penalties of $2,616,451. ECF No. 162.

On August 14, 2025, the SEC filed the pending motion for default judgment against Minuskin, Stoll, and Golden Genesis. ECF No. 153.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court, on application by a plaintiff, to enter default judgment following an entry of default by the Clerk against a defendant. Fed. R. Civ. P. 55(b)(2). It is within the Court's discretion whether to enter default judgment following entry of default. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The Ninth Circuit has identified several factors (the "*Eitel* factors") that courts may consider before entering default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471-72. Default judgments are "ordinarily disfavored," and "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citing *Eitel*, 782 F.2d at 1472).

Once a default is entered, all well pleaded allegations in the complaint regarding liability are taken as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). In contrast, a plaintiff must "prove all damages sought in the complaint." *Dr. JKL Ltd. V. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010); *see also Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093-94 (N.D. Cal. 2008) ("Although the Court must generally accept the factual allegations of the Complaint as true, allegations relating to the amount of damages must be supported by some evidence."). In determining damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. *See Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). The requested relief cannot differ in kind or exceed in amount what was demanded in the complaint. *See* Fed. R. Civ. P. 54(c); *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).

### III.  JURISDICTION AND SERVICE OF PROCESS

"Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction, personal jurisdiction, and service." *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1126 (C.D. Cal. 2023) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

Here, the Court has federal question jurisdiction over all claims in the Complaint. 28 U.S.C. § 1331.

The Court also has personal jurisdiction over defendants Minuskin, Stoll, and Golden Genesis. Section 27 of the Exchange Act authorizes nationwide service of process for actions based on violations of the federal securities laws. 15 U.S.C. § 77v(a). The Ninth Circuit has explained that the exercise of personal jurisdiction pursuant to this provision is consistent with due process if a defendant has at least "minimum contacts" with the United States. *See Sec. Inv. Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985) ("[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court."). Here, Minuskin and Stoll are Nevada residents, and Golden Genesis is a Nevada corporation. ECF No. 1 ¶¶ 13, 16, 17. This is adequate for the Court's exercise of personal jurisdiction. Additionally, Golden Genesis waived any defect in personal jurisdiction by appearing in the action and not contesting jurisdiction. *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction.").

Golden Genesis's appearance also waived any defect in service of process. *Id.* Upon review of the affidavits of service, ECF No. 5, the Court concludes that service of process was proper as to Minuskin and Stoll.

## IV.   PROCEDURAL REQUIREMENTS

"A clerk's entry of default is a necessary predicate to obtaining default judgment." *Siegler v. Sorrento Therapeutics, Inc.*, No. 3:18-cv-01681-GPC-NLS, 2018 WL 6303728, at *1 (S.D. Cal. Dec. 3, 2018). "Any such request must . . . contain an affidavit or declaration that the summons and complaint have been properly served." *Id.* (citing Fed. R. Civ. P. 55(a)). Here, Plaintiff obtained entry of default against Minuskin and Stoll. ECF No. 15. In requesting entry of default, Plaintiff's counsel submitted appropriate supporting declarations and proof of service. ECF Nos. 4, 13-14. Plaintiff has satisfied the procedural requirements for default judgment under Fed. R. Civ. P. 55(a).

//
//

## V. *EITEL* FACTORS

The Court next considers the *Eitel* factors.

### A. Possibility of Prejudice to Plaintiff

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). Given that Plaintiff will "likely be without other recourse for recovery" if default judgment is not entered, this factor weighs in favor of granting default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177.

### B. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors consider the substantive merits of a plaintiff's claims and the sufficiency of the operative complaint, respectively. *See Eitel*, 782 F.3d at 1471. These two factors, often analyzed together, require that the allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992), superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 4669 (citing *Danning*, 572 F.2d at 1388).

#### 1. Allegations

The Complaint bring claims for: (1) sale of unregistered securities in violation of Securities Act Sections 5(a) and (c), against Minuskin, Stoll, and Golden Genesis (Claim Seven); (2) acting as an unregistered broker-dealer in violation of Exchange Act Section 15(a), against Minuskin and Stoll (Claim Eight); and (3) securities fraud in violation of

Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5 thereunder, against Minuskin and Golden Genesis (Claims One, Three, Five, Six, and Nine).

In brief, the Complaint alleges that Minuskin was the owner of a company called Retire Happy LLC ("Retire Happy") that promoted "investment opportunities" to retirees. ECF No. 1 ¶ 6. Stoll was an account specialist for Retire Happy who worked at Minuskin's direction and interacted directly with the retirees. *Id.* ¶ 8. Retire Happy agreed to promote investments in two companies to its clients. First was Golden Genesis, which described itself as engaged in the business of collecting blood plasma from young donors for transfusion into older adults as an anti-aging treatment. *Id.* ¶ 32. Co-defendant Casey is the majority owner and CEO of Golden Genesis, who founded the company with co-defendant DiRicco, the company's CFO. *Id.* ¶¶ 14, 16, 32. Minuskin also had a substantial ownership stake in Golden Genesis. *Id.* ¶ 38. Second was Until Tomorrow Drivetrains LLC ("Until Tomorrow"), a company whose stated purpose was to pool investors to participate in the initial public offering of another company, Adomani, Inc., involved in providing electric and hybrid drivetrains for school buses and other commercial vehicles. *Id.* ¶ 20. Minuskin had control over Until Tomorrow and was a partial owner; co-defendant Dennis DiRicco was the founder and also a partial owner. *Id.* ¶¶ 57, 58, 61. Retire Happy entered into separate agreements with Golden Genesis and Until Tomorrow, under which those companies would pay commissions amounting to 12% of the gross investor funds raised. *Id.* ¶¶ 34, 63. 10% of the funds raised would go to Retire Happy and 2% of the funds raised would go to another company that Minuskin owned, which would then be paid over to DiRicco. *Id.* Additionally, one tenth of the 10% that went to Retire Happy was paid to Stoll as a commission. *Id.*

Retire Happy raised funds for both Golden Genesis and Until Tomorrow through promissory notes that promised investors 10% interest. *Id.* ¶ 4. In connection with those notes, the Retire Happy client would be the "lender" and the company that "borrower." *Id.* ¶ 33. From April 2016 through August 2019, Golden Genesis raised over $10 million from over 200 Retire Happy investors. *Id.* ¶ 82. From December 2016 through February 2017,

Until Tomorrow raised approximately $5.9 million from over 100 Retire Happy investors. *Id.* ¶ 83.

### 2. Securities

The Complaint alleges that the promissory notes at issue in this case were "securities" subject to the federal securities laws. *See id.* ¶¶ 79-90. The SEC alleges that "[e]ach investor invested money in a common enterprise, namely the development of a plasmapheresis center and the participation in the IPO of Adomani, with the expectation of a ten percent (10%) profit in the form of interest that was to be derived from the efforts of others." *Id.* ¶ 79. The Complaint adequately alleges that the promissory notes are securities. Indeed, the Court has previously determined that the Golden Genesis promissory notes were securities, and granted summary judgment to the SEC in its claim against Casey and Golden Genesis for sale of unregistered securities. ECF No. 55 at 7-13. That analysis is largely applicable to the Until Tomorrow promissory notes, which were offered on the same terms through the same channel, and promoted by the same people to the same investors—clients of Retire Happy.

### 3. Unregistered offer and sale of securities

Claim Seven alleges that Defendants violated Sections 5(a) and 5(c) of the Securities Act, which prohibits the direct or indirect sale of securities unless a registration statement is in effect, by failing to register the promissory notes as securities. *See* 15 U.S.C. §§ 77e(a), 77e(c). A prima facie violation of Section 5 exists when "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). Section 5 is a strict liability offense and does not require a showing of scienter. *Id.* at 1256.

The Court has previously granted summary judgment to the SEC on this claim against Golden Genesis. ECF No. 55 at 20-21. The Complaint adequately alleges this claim as to Minuskin and Stoll as well. ECF No. 1 ¶¶ 84-87, 116-18.

//

### 4. *Unregistered broker-dealer*

Claim Eight alleges that Minuskin and Stoll violated Section 15(a) of the Exchange Act, which makes it unlawful for any broker "to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in . . . any security . . . unless such broker . . . is registered" in accordance with Exchange Act Section 15(b). 15 U.S.C. § 78o(a). Exchange Act Section 3(a)(4) defines a "broker" generally as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4). "Section 15(a) is a strict liability statute; neither scienter nor negligence is required to prove its violation." *SEC v. Qi*, No. CV 17-08856-CJC (JCX), 2018 WL 5263187, at *7 (C.D. Cal. Mar. 21, 2018).

In determining whether an individual qualifies as a "broker" under the Exchange Act, courts have considered, as non-exhaustive factors, whether the individual: (1) is an employee of the issuer of the security; (2) received transaction-based income such as commissions rather than a salary; (3) sells or sold securities from other issuers; (4) was involved in negotiations between issuers and investors; (5) advertised for clients; (6) gave advice or made valuations regarding the investment; (7) was an active finder of investors; and (8) regularly participates in securities transactions. *See SEC v. Feng*, 935 F.3d 721, 32 (9th Cir 2019) (citing *SEC v. Hansen*, No. X83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)). Here, the Complaint alleges that both Minuskin and Stoll sold securities for transaction-based compensation in the form of commissions equaling a percentage of the funds they raised. ECF No. 1 ¶¶ 34, 63. These commissions amounted to hundreds of thousands of dollars based on sales of securities to hundreds of investors over the course of approximately three years. *See id.* ¶¶ 82, 83, 90. The Complaint further alleges that Minuskin obtained customers for Retire Happy by setting up a boiler room and hiring a team of sales agents to cold-call customers throughout the United States. *Id.* ¶ 86. Stoll worked inside the boiler room as an "account specialist," where he advised investors that the promissory notes were "safe and secure." *Id.* ¶¶ 86, 87. The Court concludes that the Complaint adequately alleges that Minuskin and Stoll were "engaged in the business of

effecting transactions in securities for the account of others," and adequately pleads a claim for violation of Section 15(a) of the Exchange Act.

### 5. *Fraud in the purchase, sale, or offer of securities*

The remaining claims at issue allege securities fraud in violation of Securities Act Section 17(a), Exchange Act Section 10(b), and Rule 10b-5. These provisions "forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *SEC v. Cole*, No. 17-56196, 2024 WL 445335, at *1 (9th Cir. Feb. 6, 2024) (quoting *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001)). A violation of Section 17(a), Section 10(b), and Rule 10b–5 is established if the defendant (1) made a material misrepresentation or omission (2) in connection with the purchase of a sale or security (3) with scienter (4) in interstate commerce. *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010). Scienter can be established by intent, knowledge, or deliberate recklessness. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568–69 (9th Cir.1990) (en banc). "[D]eliberate recklessness involves an extreme departure from the standards of ordinary care that presents a danger of misleading buyers or sellers that is so obvious that the spokesperson must have been aware of it." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 952 (9th Cir. 2023) (quotations omitted). Violations of Sections 17(a)(2) and (3) require a lesser showing of negligence.[1] *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007).

As to Golden Genesis, the SEC advances several theories of fraud. First, Golden Genesis marketing materials drafted by Casey falsely and fraudulently represented that the promissory notes would be secured by a UCC-1 financing statement on all the assets of Golden Genesis, when in reality no UCC-1 statements were filed. ECF No. 1 ¶¶ 37, 41.

---

[1] Section 17(a)(1) prohibits "employ[ing] any device, scheme, or artifice to defraud" while Section 17(a)(2) and (a)(3) prohibit "obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact" and "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q.

Second, Golden Genesis marketing materials failed to disclose that Golden Genesis had agreed to pay Retire Happy a 12% commission from gross investor funds; that CFO DiRicco had two felony convictions as well as a past securities enforcement action; and that CEO Casey had been the subject of a past SEC enforcement action. *Id.* ¶ 38. Third, Casey and Golden Genesis engaged in a scheme to pay the interest to investors using other investor funds, making "Ponzi-like payments." *Id.* ¶¶ 49-51. The Complaint pleads facts establishing scienter in connection with these theories as to Golden Genesis's executives, Casey and DiRicco. *Id.* ¶ 72-78. The Court concludes that the SEC has adequately pleaded securities fraud against Golden Genesis in Claims One and Three.[2]

As to Minuskin, the SEC's principal theory of fraud is that she caused Stoll to represent to investors that the Golden Genesis and Until Tomorrow promissory notes were "safe and secure" investments, when in fact she had conducted no due diligence on the investment opportunities and had no legitimate basis for making such a statement. *Id.* ¶¶ 8, 9, 39. 64. The Complaint alleges that Minuskin thereby acted with recklessness and negligence. *Id.* ¶¶ 108, 112. The SEC further alleges that Minuskin aided and abetted her co-defendants DiRicco, Casey, and Golden Genesis in their schemes to defraud, in that she promoted these investments knowing that, or acting in reckless disregard of the fact that, Golden Genesis and Until Tomorrow were using investor funds to make Ponzi-like payments to those investors. *Id.* ¶¶ 124. These allegations of scienter are plausible, in light of the Complaint's further allegations about her ownership stake in not only Retire Happy but also Golden Genesis and Until Tomorrow, her control over Until Tomorrow, and the substantial commissions she received and distributed without disclosure to Retire Happy

---

[2]  The SEC pursued these same theories at trial based on the same facts, and obtained a jury verdict against Golden Genesis's CEO Casey. Additionally, in the almost three years that Golden Genesis was represented by counsel in this case, Golden Genesis did not challenge the adequacy of these allegations.

customers. *Id.* ¶¶ 10, 34, 38, 58. The Court concludes that the Complaint adequately pleads securities fraud and aiding and abetting against Minuskin in Claims Five, Six, and Nine.

### C. Sum of Money at Stake

The fourth *Eitel* factor considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176; *see United States v. Broaster Kitchen, Inc.*, No. CV 14-09421 MMM (PJWx), 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015) ("This determination requires a comparison of the recovery sought and the nature of [the defaulting party's] conduct to determine whether the remedy is appropriate."). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted." *ACS Recovery Servs., Inc. v. Kaplan*, No. C 09-01304 JSW, 2010 WL 144816, at *6 (N.D. Cal. Jan. 11, 2010) (citing *Bd. of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, No. C 97-2661, 1997 WL 797922, at *1 (N.D. Cal. Dec. 15, 1997)).

Here, the SEC seeks disgorgement in the amount of $457,476 for Minuskin and $404,046 for Stoll; pre-judgment interest on that disgorgement in the amounts of $175,204.24 and $145,079.00, respectively; and civil penalties in the amount of $457,476 for Minuskin, $22,234 for Stoll, and $3,562,251 for Golden Genesis. As discussed below, these amounts are reasonable based on Defendants' conduct; and indeed even cumulatively they are considerably less than the amount of loss to investors. This factor favors entry of default judgment.

### D. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor considers whether the material facts are likely to be disputed in the case. *PepsiCo*, 238 F. Supp. 2d at 1177. Where, as here, "defendants have failed to respond to the complaint, the court accepts the [plaintiff's] allegations as true." *Broaster Kitchen*, 2015 WL 4545360, at *6 (citing *PepsiCo*, 238 F. Supp. 2d at 1177); *see TeleVideo*, 826 F.2d at 917-18 (holding that upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

Accordingly, the material facts are undisputed, and this factor weighs in favor of granting default judgment.

### E. Whether Default was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177. Courts have found that a party's default "cannot be attributed to excusable neglect" where the party has been "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion." *See Blumenthal Distrib.*, 2023 WL 2356713, at *7 (citing *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001)).

Here, each of the Defendants was adequately served with process. ECF No. 5. Minuskin and Stoll were also served with the SEC's request for entry of default against them, as well as with the SEC's initial motion for default judgment—all filed in 2022. ECF Nos. 13, 14, 18. Golden Genesis is likewise aware of the orders and docket entries advising that default would enter if Golden Genesis failed to obtained representation; the principal of Golden Genesis was its co-defendant Thomas Casey, who actively defended the case against him. ECF Nos. 84, 96. The SEC's pending motion for default judgment was likewise served on all three defaulting defendants. ECF No. 153-1. The possibility that the default resulted from excusable neglect here is remote, if not non-existent. *See* ECF No. 10-3 at 2; *see H.I.S.C. v. Franmar Int'l Imps., Ltd.*, No. 16-cv-480-BEN-WVG, 2018 WL 8648381, at *3 (S.D. Cal. Apr. 4, 2018) ("[A] court may find excusable neglect to be lacking where a defendant was properly served with the complaint and notice of default judgment."); *see also Broaster Kitchen*, 2015 WL 4545360, at *6 (finding possibility of excusable neglect was "remote" where, since service was effected, defendants had neither responded to the complaint nor attempted to have their defaults set aside). This factor also weighs in favor of granting default judgment.

### F. Policy Favoring Decision on the Merits

Finally, the Court recognizes the strong policy in favor of deciding cases "upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere

existence of [Rule] 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). "Rule 55(a) allows a court to decide a cause before the merits are heard if defendants fail to appear and defend." *Broaster Kitchen*, 2015 WL 4545360, at *7. Here, Defendants' failure to answer the Complaint, or to otherwise participate in the instant action, "makes a decision on the merits impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendants have not participated in this case, this factor weighs in favor of granting default judgment.

Accordingly, the *Eitel* factors weigh in favor of Plaintiff. The Court exercises its discretion to grant default judgment.

## VI. REQUESTED RELIEF

The SEC seeks the following forms of relief against the defaulting Defendants: (1) a permanent injunction from violating the federal securities laws; (2) disgorgement of ill-gotten gains with prejudgment interest, as to Minuskin and Stoll; and (3) civil penalties. ECF No 153-1 at 18.

### A. Injunctive Relief

To obtain a permanent injunction, the SEC must demonstrate that: (1) the SEC has succeeded on the merits; (2) irreparable harm will likely result in the absence of the injunction; (3) the balance of equities tips in the SEC's favor; and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *cf. Starbucks v. McKinney*, 602 U.S. 339, 345 (2024) ("For preliminary injunctions, the four criteria identified in *Winter* encompass the relevant equitable principles.").

Here, the SEC has succeeded on the merits, having obtained entry of default against Minuskin, Stoll, and Golden Genesis—consistent with the SEC's favorable jury verdict against co-defendant Casey and entry of judgment against co-defendant DiRicco—satisfying the first *Winter* factor.

In determining the likelihood of irreparable harm absent an injunction, the Court considers the likelihood of future violations by the defaulting Defendants. *SEC v. Murphy*,

626 F.2d 633, 655 (9th Cir. 1980). Courts assess the totality of the circumstances, considering factors such as (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his or her conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and (5) the sincerity of his or her assurances against future violations. *Id.* Those factors favor a finding of irreparable harm here. The Complaint alleges a fraudulent course of conduct by all Defendants spanning several years. The refusal of Minuskin and Stoll to participate in this lawsuit, also lasting several years, gives no indication of their recognition of their wrongful conduct and no assurance against future violations. Nor has Golden Genesis provided any such indication or assurances. The Court has been presented with no evidence of a change in livelihood by Minuskin or Stoll that would mitigate the risk of future violations.

The balance of the equities and the public interest also favor an injunction here, based on the need to protect investors. *See, e.g.*, *SEC v. Ballout*, No. 24-81170-CV, 2025 U.S. Dist. LEXIS 110864, at *10 (S.D. Fla. June 11, 2025). The Court concludes that the limited injunction sought by the SEC is warranted here.

### B. Disgorgement and Pre-Judgment Interest

In *Liu v. SEC*, 591 U.S. 71 (2020), the Supreme Court reaffirmed the SEC's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Id.* at 75. The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (citation omitted). Once the SEC establishes such a reasonable approximation, the burden shifts to defendants to demonstrate that the figure is unreasonable. *Id.*

Here, the SEC submits a declaration by its accounting expert Duane Campbell explaining his analysis of relevant bank records, reflecting that Minuskin received approximately $457,476 and Stoll received approximately $404,046 in connection with their scheme. ECF No. 153-2 ¶¶ 60-73 (declaration of accounting expert describing

analysis of amounts received, including methodology and sources); ECF Nos. 153-3, 153-4 (summary charts). The estimate for Minuskin is based on payments that Golden Genesis made to Minuskin or to her real estate company, Land Jewels, the majority of these payments designated as "commissions," less the amounts that Land Jewels in turn paid to co-defendant DiRicco. The estimate for Stoll is based on commission payments by Retire Happy to an entity that Stoll owned called Third Son LLC, separate and apart from Stoll's salary at Retire Happy, and coinciding with the date range of the Golden Genesis and Until Tomorrow Drivetrains offerings. Neither Minuskin nor Stoll have appeared or contended that these estimates are unreasonable. Having reviewed the declaration and supporting exhibits—which were also the subject of Mr. Campbell's expert testimony in the trial against defendant Casey—the Court concludes that they are reasonable approximations of the net profits of Minuskin and Campbell in connection with their unlawful scheme. The SEC intends to distribute this disgorgement through a Fair Fund to compensate investor victims. *See* ECF No. 153-5 ¶ 11. The Court concludes that disgorgement is warranted, in the amounts of **$457,476** for Minuskin and **$404,046** for Stoll, for the benefit of investors. *See, e.g.*, *SEC v. Premier Holding Corp.*, No. 21-55249, 2022 WL 541194, at *1 (9th Cir. Feb. 23, 2022) (affirming disgorgement order where "Defendants failed to meet their burden of proving that any of the purported business expenses were actually incurred or were 'legitimate'"); *SEC v. Motty Mizrahi*, No. CV 19-2284 PA, 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020) (ordering disgorgement where SEC demonstrated amount constituted "a reasonable approximation of [defendant's] net profits that are causally connected to his securities law violations" and disgorgement was ordered "for the benefit of investors").

The SEC also seeks an award of prejudgment interest. "The ill-gotten gains include prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity." *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). Whether and at what interest rate to grant prejudgment interest are generally matters in the court's discretion, taking into account the need to fully compensate the wronged party for actual damages

suffered, consideration of fairness and the relative equities of the award, the remedial purpose of the statute involved, and such other general principles considered relevant by the court. *See SEC v. Olins*, 762 F. Supp. 2d 1193, 1198-99 (N.D. Cal. 2011) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)). Here, Minuskin and Stoll have had the benefit their ill-gotten gains since the date of receipt and throughout the litigation, and fairness warrants that they pay interest on the amounts disgorged.

For purposes of calculating prejudgment interest on disgorgement, the Ninth Circuit has affirmed the use of the IRS interest rate for underpayment of federal income tax, 26 U.S.C. § 6621(a)(2). *See Platform Wireless*, 617 F.3d at 1099. Using that rate, the disgorgement award as to Minuskin is subject to an additional ***$175,204.24*** in prejudgment interest, and the disgorgement award as to Stoll is subject to an additional ***$145,079.00*** in prejudgment interest. The Court awards these amounts.

### C. Civil Penalties

Under Section 20(d)(2)(A) of the Securities Act and Section 21(d)(3)(B) of the Exchange Act, the amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." *Id.* §§ 77t(d)(2)(A), 78u(d)(3)(B). Both statutes provide for the imposition of penalties according to a statutory three-tier system. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). First-tier penalties may be imposed for any violation of either Act. *See id.* §§ 77t(d)(2)(A), 78u(d)(3)(B)(i). Second-tier penalties apply to violations that "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement." *Id.* §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii). Third-tier penalties apply to violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Each tier provides that a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation." *Id.* §§ 77t(d)(2), 78u(d)(3)(B). For violations occurring from November 3,

2015 through the present, the maximum inflation-adjusted statutory penalty for natural persons is $11,823 as to first-tier penalties; $118,225 as to second-tier penalties; and $236,451 as to third-tier penalties. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B); *see also* Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2025), *available at* https://www.sec.gov/enforce/civil-penalties-inflation-adjustments (last visited Sept. 9, 2025). Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from future violations, in determining the amount of civil penalties courts frequently apply the factors set forth in *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980), set forth above, used to determine the likelihood of future violations in the context of injunctive relief. *See, e.g.*, *SEC v. Abacus Int'l Holding Corp.*, No. C 99-02191 TEH, 2001 U.S. Dist. LEXIS 12635, at *15 (N.D. Cal. Aug. 16, 2001).

For Minuskin, the SEC seeks a third-tier civil penalty of $457,476, equal to the amount of her pecuniary gain. ECF No. 153-1 at 24. A third-tier penalty applies here, as the conduct involves fraud and resulted in substantial loss to investors. The *Murphy* factors, discussed above, support the SEC's request. Minuskin's violations involved a high degree of scienter, recurrent wrongful conduct, and a likelihood of future violation; there is no indication of her recognition of the wrongful nature of her conduct, and there are no assurances by her against future violations. The Court therefore imposes a civil penalty against Minuskin in the amount of ***$457,476***. *See, e.g.*, *SEC v. Pithapurwala*, No. CV 21-9384 PA (AFMX), 2022 WL 2200400, at *3 (C.D. Cal. June 13, 2022) (imposing a penalty equal to pecuniary gain to deter wrongdoer); *SEC v. Jensen*, No. 22-CV-06817-CAS-GJSX, 2022 WL 1664258, at *8 (C.D. Cal. May 23, 2022) (same); *SEC v. North Star Fin.*, LLC, No. GJH-15-1339, 2019 WL 3860321, at *10 (D. Md. Aug. 15, 2019) (imposing penalty equal to pecuniary gain).

For Stoll, the SEC seeks an award of two first-tier penalties against Stoll, based on one penalty each for his role in the two offering funds, totaling $22,234. This amount is slightly less than the inflation adjusted maximum of $11,823 per violation for an

individual.³ The Court concludes that the requested amount is appropriate under the *Murphy* factors, and therefore imposes a civil penalty against Stoll in the amount of ***$22,234***.

For Golden Genesis, the SEC recommends a total civil penalty of $3,562,251, based on: (1) a first-tier penalty of $10,000 for each of Golden Genesis's 238 violations of selling unregistered securities in violation of Securities Act Section 5, that is, $2,380,000; and (2) a separate third-tier penalty of $1,182,251 for violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5. The requested tier-one penalty is appropriate, based on the evidence of the number of unregistered securities sold to investors. *See* ECF No. 153-2 ¶¶ 5, 28. A third-tier penalty is also appropriate here, as the conduct involves fraud and resulted in substantial loss to investors. The *Murphy* factors, discussed above, support the SEC's request. Golden Genesis's violations involved a high degree of scienter, recurrent wrongful conduct, and a likelihood of future violation; far from recognizing the wrongful nature of the conduct or providing sincere assurances against future violations, Golden Genesis's principal Thomas Casey maintained at trial that neither he nor Golden Genesis did anything wrong. The Court concludes that the requested amount is appropriate, and therefore imposes a civil penalty against Golden Genesis in the amount of ***$3,562,251***.

//
//
//
//
//
//

---

³     *See* SEC, "Inflation Adjustments to Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of January 15, 2025)," available at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.

## VII.  CONCLUSION

For the foregoing reasons, the SEC's motion for default judgment is **GRANTED**. The Court will enter judgment against Minuskin, Stoll, and Golden Genesis as provided herein.

**IT IS SO ORDERED**.

Dated:  September 11, 2025

_____
Hon. Robert S. Huie
United States District Judge