UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                      Plaintiff,<br><br>v.<br><br>THOMAS F. CASEY and GOLDEN GENESIS, INC.,<br><br>                      Defendants. | Case No.:  22-cv-483-RSH-AHG<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR STAY OF EXECUTION OF JUDGMENT**<br><br>[ECF No. 170] |

    Pending before the Court is a motion by defendants Thomas F. Casey and Golden Genesis, Inc. ("Golden Genesis"), for a stay of execution of judgment, or in the alternative, to reduce the amount of the required supersedeas bond. ECF No. 170. As set forth below, the motion is denied.

## I.  BACKGROUND

    The Court, in its order granting post-trial remedies to the SEC, summarized the procedural history as it pertains to Mr. Casey and Golden Genesis. ECF No. 161. Final judgment was entered against Mr. Casey on September 10, 2025 in the amount of $2,616,451, and the following day against Golden Genesis in the amount of $3,562,251.

ECF Nos. 162, 164. Golden Genesis has been in default since February 19, 2025. ECF No. 97.

Mr. Casey and Golden Genesis, through counsel, filed a notice of appeal on November 7, 2025. ECF No. 171. The same day, they filed the present motion. ECF No. 170. The motion is fully briefed. ECF Nos. 176, 177.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay [of a monetary judgment] by providing a bond or other security." "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay of the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). Because of this purpose—protecting the appellee from loss resulting from a stay of execution—"a full supersedeas bond should … be required." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir.1987). Thus, "the standard practice of district courts is to require that the supersedeas bond be a surety bond, and that it be for the full amount of the judgment plus interest, costs, and an estimate of any damages attributed to the delay." *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 05-cv-1660-J (WMC), 2009 WL 1390811, at *2 (S.D. Cal. May 15, 2009) (citation omitted). District courts have "inherent discretionary authority in setting supersedeas bonds." *Rachel*, 831 F.2d at 1505 n.1.

Defendants ask to waive or modify the full supersedeas bond requirement here. "In determining whether to waive or modify supersedeas bond requirements, district courts in the Ninth Circuit consider the so-called "*Dillon* factors[.]" *SEC v. Heart Tronics, Inc.*, No. CV-11-1962 JVS (ANx), 2016 WL 9083366, at *1 (C.D. Cal. June 3, 2016). These factors are as follows:

> (1) the complexity of the collection process;
>
> (2) the amount of time required to obtain a judgment after it is affirmed on appeal;

>  (3) the degree of confidence that the district court has in the availability of funds to pay the judgment;
>
>  (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and
>
>  (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988); *see also Kranson v. Fed. Express Corp.*, No. 11-cv-5826-YGR, 2013 WL 6872495, at *1 (N.D. Cal. Dec. 31, 2013) ("Courts in the Ninth Circuit regularly use the *Dillon* factors in determining whether to waive the bond requirement."); *Lewis v. Kern Cnty.*, No. 21-cv-378-KES-CDB, 2025 WL 1865995, at *4 (E.D. Cal. July 7, 2025) (contrasting the *Dillon* factors, which "address the concerns of staying a monetary judgment under Rule 62(b)," with the four-factor test in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), which is "more appropriately applied to stays of injunctive relief under Rule 62(d)").

"The Clerk of Court's entry of default cuts off [a] Defendant['s] rights to appear in th[e] action, file counterclaims, or to present a defense." *Great Am. Ins. Co. v. M.J. Menefee Const., Inc.*, No. F06-0392 AWIDLB, 2006 WL 2522408, at *2 (E.D. Cal. Aug. 29, 2006); *see also Devore v. Dominguez*, No. CV 15-06291-JAK (DFM), 2018 WL 10705485, at *1 (C.D. Cal. May 2, 2018) ("Entry of default cuts off the defendant's right to appear in the action . . . .").

### III.  ANALYSIS

Defendants' motion invokes the *Dillon* factors, focusing on financial hardship. Mr. Casey's declaration states that "Golden Genesis is a revenue-neutral business, operating at approximately $100,000 per month," and that "[r]equiring Golden Genesis to post a bond while our appeal is pending would force the immediate closure of the business." ECF No. 170-2 ¶¶ 3, 4. Mr. Casey asserts that this closure would cause the company's ten employees to lose their jobs. *Id.* ¶ 4. Mr. Casey further states that closure of the business would result

in loss to Mr. Casey of the $37,198.77 average salary that he draws from the business, requiring him to meet his basic living expenses based on his Social Security income alone. *Id.* ¶ 7. He also states that he has approximately $19,000 in credit card debt. *Id.* ¶ 8. Finally, Mr. Casey states that if Golden Genesis ceases operations, "sixty monthly patients receiving blood products from Golden Genesis would be forced to find alternative sources of blood, when Texas blood reserves have reached critical levels," citing a press release from a Texas nonprofit called Carter BloodCare. *Id.* ¶ 6.

Mr. Casey's declaration, to the extent it bears on the *Dillon* factors, is highly conclusory. Although asserting that Golden Genesis is "revenue-neutral" and operates at approximately $100,000 per month, he provides no further elaboration of or detail regarding the company's past revenues or expenses. Mr. Casey does not propose any bond amount that Golden Genesis is actually able to pay, but suggests that requiring the company to post "a bond"—that is, *any* bond—would force the immediate closure of the business. But Mr. Casey provides no information whatsoever about the assets or liabilities of the company to support this claim. The Court is not persuaded by these generalized assertions. Mr. Casey has owned Golden Genesis for many years, and in that same period of time has been responsible for raising funds for the company. Mr. Casey is aware of how to present precise and detailed statements reflecting a company's financial position, and he has declined to do so here. Without a financial picture of Golden Genesis, the Court also lacks a financial picture of Mr. Casey, the company's owner.

To the extent the *Dillon* factors refer to the defendant's "precarious financial situation," they do so not to guarantee that a defendant may carry on business operations, but rather to determine whether the requirement of posting a bond "would place other creditors of the defendant in an insecure position." *Dillon*, 866 F.2d at 905. Mr. Casey has provided no information about Defendants' creditors or those creditors' financial positions—other than providing limited information about himself drawing a salary from Golden Genesis, and stating that the company has ten employees.

Defendants' motion declines to address the interests of the prevailing party in this case, or of the hundreds of investors that he defrauded out of their retirement savings. His motion implies that they should simply have to continue to wait as he continues his appeal, and to see if there is anything left for satisfaction of the judgment when his appeal is concluded. Yet concerns about protection of the prevailing party are reflected in the first, second, third, and fourth *Dillon* factors; these concerns favor denial of the motion. The financial picture that Mr. Casey paints does not indicate that Defendants will be any better positioned to satisfy the judgment following an appeal than they are at present; indeed, if Mr. Casey's declaration is credited, the financial position of Defendants appears precarious even before execution of any judgment. This financial uncertainty favors denial of any unsecured or under-secured stay of judgment.

Defendants' motion invokes the public interest in allowing him to continue to sell plasma. ECF No. 170-1 at 7-8. Mr. Casey cites the needs of his employees as well as his customers. In evaluating the public interest, however, the Court also considers the need to deter and to remedy the pervasive fraud that Mr. Casey committed through Golden Genesis—fraud that deprived retired investors of a significant portion of their savings. The Court also considers Mr. Casey's unrepentant posture toward his own actions, including his brazen offers to sell plasma to his elderly, defrauded victims during their testimony at trial. The Court is mindful of Mr. Casey's representation that ten employees will lose their jobs if Golden Genesis goes out of business; these employees are presumably not at fault for Mr. Casey's own fraud. But assuming Mr. Casey's assertion to be true, it does not mean that their interest in future employment with Golden Genesis outweighs the interest of the SEC as the prevailing party, and of Mr. Casey's victims in receiving some return of the retirement funds of which they were defrauded many years ago.

Finally, the Court is highly skeptical of Defendants' assertion of the "needed medical services" of the 60 customers of Golden Genesis. ECF No. 177 at 6. Mr. Casey's declaration does not describe these services, or these medical needs, at any level of detail. He cites a press release by a non-profit regarding the need for blood donations in Texas;

but as promoted by Mr. Casey, Golden Genesis is a *for-profit* company that sells *plasma*; and indeed, the business plan of the company is to charge customers for plasma collected from 18- to 25-year-olds in order to help those customers counter the effects of "aging." The Court is not persuaded that Golden Genesis in fact offers "needed medical services" to anyone.

Accordingly, the Court in the exercise of its discretion declines to waive or reduce the bond requirement under Rule 62(b).[1]

## IV.   CONCLUSION

For the foregoing reasons, the motion by Mr. Casey and Golden Genesis is **DENIED**.

**IT IS SO ORDERED**.

Dated:  December 10, 2025

*Robert S. Huie*
_____
Hon. Robert S. Huie
United States District Judge

---

[1] The fact that Golden Genesis is in default independently warrants denial of its motion. *See Great Am. Ins. Co.*, 2006 WL 2522408, at *2.